1  Jeffrey G. Sheldon (State Bar No. 67516)
2  William J. Brutocao (State Bar No. 75959)
3  A. Eric Bjorgum (State Bar No. 198392)
   E-Mail: william.brutocao@usip.com
4  SHELDON MAK ROSE & ANDERSON PC
   100 Corson Street, Third Floor
5  Pasadena, California  91103-3842
6  Telephone: (626) 796-4000
7  Facsimile: (626) 795-6321

8  Elizabeth Swanson (State Bar No. 150894)
   SWANSON & ASSOCIATES
9  9454 Wilshire Boulevard, Suite 500
10 Beverly Hills, California  90212
11 Telephone: (310) 860-0880
   Facsimile:  (310) 860-0830
12 Email: els@elswansonlaw.com

13 Attorneys for Plaintiffs and Counterdefendants
14 MM&R PRODUCTS, INC. and TRE MILANO, LLC

15                     UNITED STATES DISTRICT COURT

16                    CENTRAL DISTRICT OF CALIFORNIA

17

18  MM&R PRODUCTS, INC.,                Case No. CV 09-04082 VBF (RBx)
19  a California corporation, and TRĒ
    MILANO, LLC, a California limited   **NOTICE OF MOTION AND**
20  liability company,                  **MOTION TO STRIKE PORTIONS**
                                        **OF COUNTERCLAIMS**
21                                      **PURSUANT TO FRCP 12(f); TO**
              Plaintiffs,               **DISMISS COUNTERCLAIMS**
22                                      **PURSUANT TO FRCP 12(b)(6), and**
          v.                            **TO STRIKE COUNTERCLAIMS**
23  STITCH N' GENIUS, INC.,             **PURSUANT TO CALIFORNIA**
    a California corporation, ELIAS     **CODE OF CIVIL PROCEDURE**
24  AMKIE,  an individual; and DOES 1 – **425.16**
25  10, inclusive,
26                                      **Date:  August 31 , 2009**
27              Defendants.             **Time:  1:30 P.M.**
                                        **Place: Courtroom 9**
28                                          **Hon. Valerie Baker Fairbank**

1  STITCH N' GENIUS, INC. a California )
2  Corporation; and ELIAS AMKIE, )
   an individual, )
3                      Counterclaimaints, )
4  Vs. )
5  MM&R PRODUCTS, INC., a )
6  California corporation; and )
7  TRÊ MILANO, LLC, a California )
   Limited Liability Company, )
8  )
9              Counterclaim-Defendants. )
10 _____)

11      TO DEFENDANTS STITCH N' GENIUS, INC. AND ELIAS AMKIE

12 AND THEIR ATTORNEYS OF RECORD:

13      PLEASE TAKE NOTICE THAT on August  31, 2009 at 1:30 p.m., or as

14 soon thereafter as the matter may be heard in Courtroom 9, United States

15 Courthouse, 312 North Spring Street, Los Angeles, CA 90012, Plaintiffs/Counter-

16 Defendants MM&R PRODUCTS, INC. and TRE MILANO, LLC ("Plaintiffs")

17 will and hereby do move this Court, as follows:

18      (1)      pursuant to Federal Rule of Civil Procedure 12(f) and

19              26(b)(5)(B) and Federal Rule of Evidence 502(b), to strike

20              Exhibit 3 to the First Amended Counterclaim and all allegations

21              pertaining thereto, including but not limited to all such

22              allegations in paragraphs 9, 10, 11, 13, 16, 17, 49, 55, 56, 58,

23              and the incorporation thereof in paragraphs 22, 27, 32, and 43;

24      (2)      pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss

25              Defendants/Counterclaimants' second, third, fourth, fifth, sixth,

26              and seventh counterclaims in the First Amended Counterclaim

27              for failure to state a claim upon which relief can be granted; and

28

1      (3)           pursuant to California Code of Civil Procedure § 425.16 to

2                    strike the second, third, fourth, fifth, and seventh counterclaims

3                    in the First Amended Counterclaim.

4

5       This motion is based upon this Notice of Motion, the accompanying

6  Memorandum of Points and Authorities in Support of the Motion, the

7  accompanying Declaration of Elizabeth Swanson and the exhibits attached thereto.

8       This motion is made following the conference of counsel pursuant to L.R. 7-

9  3 which took place on July 23, 2009.

10

11  DATED:  August  6 , 2009          SHELDON MAK ROSE & ANDERSON PC

12

13                         By: _____

14                           William J. Brutocao

15                      Attorneys for Plaintiffs/Counterdefendants
                             MM&R PRODUCTS, INC. and TRE
                             MILANO, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................. 1

ARGUMENT ...................................................................... 1

I.   Exhibit 3 to the First Amended Counterclaim Should Be Stricken as Immaterial Matter Under Fed.R.Civ.P. 12(f) ....................................... 1

II.   Several of the Counterclaims Should be Dismissed for Failure To State a Claim Because Bad Faith Is Not Properly Pleaded ................. 5

A.   Bad Faith In Patent Law ................................................. 5

C.   Counterclaimants Have Failed To Plead Bad Faith Adequately on Several of The Counterclaims ............................................ 8

Counterclaim 2:  Interference with contractual relations ..................... 8

Counterclaim 3:  Interference with Prospective Economic Advantage: ................................................................. 9

Counterclaim 4: Violation of Cal. Bus. & Prof. Code § 17200 ........... 9

Counterclaim 5:  Unfair Competition Under California Common Law: ................................................................. 9

III.   Tre Milano's Activities Are Protected Petitioning, So That Defendants' Counterclaims Should Be Stricken Under the Anti-SLAPP Statute and Fees Awarded. .................................... 10

A.   The Anti-SLAPP Statute in Federal Court. .................................. 11

B.   All of the Counterclaims Except the First and Sixth Should Be Stricken Under the Anti-SLAPP Statute ............................. 13

IV.   Plaintiffs Have Properly Pursued a Patent Infringement Claim Based on Defendants' Advertising and Offering For Sale a Knock-Off of Plaintiffs' Patented Product. .................................... 15

V.   The Court Should Rule As A Matter of Law That the InStyler Trademark Is Distinctive .................................................. 16

CONCLUSION ................................................................. 18

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*800 Adept, Inc. v. Murex Securities, Ltd.,*
    539 F.3d 1354 (Fed. Cir. 2008) .................................................... 6
    510 U.S. 517 (1994) ..................................................................... 4

*Ashcroft v. Iqbal, ---,*
    U.S. - - - - , --- S.Ct. ----, --- L.Ed.2d - - - - , 2009 WL 1361536, at
    *12 (May 18, 2009) .................................................................... 6

*In re Bah,*
    321 B.R. 41 (9th Cir.BAP2005) .............................................. 12

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).................. 6, 7,8

*Concrete Unlimited Inc. v. Cementcraft, Inc.,*
    776 F.2d 1537 (Fed. Cir. 1985) .............................................. 14

*Dominant Semiconductors SDN. BHD. v. Osram GMBH,*
    524 F.3d 1254 (Fed.Cir.2008) ........................................... passim

*E.I. du Pont de Nemours & Co. v. Berkley and Co., Inc.,*
    620 F.2d 1247 (8th Cir. 1986) .................................................. 2

*Fantasy, Inc. v. Fogerty,*
    984 F.2d 1524 (9th Cir. 1993) .................................................. 4

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
    362 F.3d 1367 (Fed. Cir. 2004) ............................................ 6, 8

*Gomez v. Vernon,*
    255 F.3d 1118 (9th Cir. 2001) .................................................. 3

*Hoffman-La Roche Inc. v. Invamed Incorporated,*
    213 F.3d 1359 (Fed. Cir. 2000) .............................................. 1

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,*
    153 F.3d 1318 (Fed Cir. 1998) ................................................................ 13

*Intamin, Ltd. v. Magnetar Technologies, Corp.,*
    483 F.3d 1328 (Fed. Cir. 2007) ................................................................ 1

*Kohli v. Gonzalez,*
    473 F.3d 1061 (9th Cir. 2007) ................................................................. 2

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir.2001) .................................................................... 7

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Industrial, Inc.,*
    508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)...................... 6, 8

*Rogers v. Home Shopping Network,*
    57 F. Supp. 2d 973 (C.D.Cal.1999) .................................................... 12, 13

*In re: Southeast Banking Corp. Securities and Loan Loss Reserves*
*Litigation,*
    212 B.R. 386 (S.D. Fla. 1996) ................................................................. 3

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992) ................................................................................ 1

*United States v. $200,266 in U.S. Currency,*
    864 F. Supp. 1414 (D. Puerto Rico 1994) ............................................... 4

*Zenith,*
    182 F.3d at 1355 ..................................................................................... 5

**STATE CASES**

*Briggs v. Eden Council for Hope and Opportunity,*
    19 Cal. 4th 1106, 81 Cal. Rptr. 2d 471 (1999) ....................................... 14

*Equilon Enterprises, LLC v. Consumer Cause, Inc.,*
    29 Cal. 4th 53, 124 Cal. Rptr. 2d 507 (2002) ................................... 11, 14

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

*Evans v. Unkow,*
        38 Cal. App. 4th 1490, 45 Cal. Rptr. 2d 624 (1995) ................................ 12

*Foboha GmbH v. Gram Technology, Inc.,*
        2008 WL. 4619795 (N.D.Ill.) (N.D.Ill.,2008) ........................................ 14

*Hagberg v. California Federal Bank,*
        32 Cal. 4th 350 (2004) ............................................................. 13

*Navellier v. Sletten,*
        29 Cal. 4th 82 (2002) .......................................................... 11, 12

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,*
        42 Cal. 3d 1157 (1986) .............................................................. 10

*Ramona Unified School Dist. V. Tsiknas,*
        135 CA 4th 510, 519-520 (2005) .................................................... 13

*Simmons v. Allstate Insurance Co.,*
        92 Cal. App. 4th 1068 (2001) ...................................................... 12

## FEDERAL STATUTES

35 U.S.C. § 271 ....................................................................... 15

FRCP 26(b)(5)(B)................................................................... 2, 3

Fed.R.Civ.P. 12(f), 26(b)(5)(B) and................................................... 1

Federal Rule of Civil Procedure 12(f)............................................ 1, 12

Federal Rules of Evidence and Rule 26(b)(5)(B) of.................................... 2

## STATE STATUTES

Cal. Civ. Proc. Code § 425.16 ............................................... 10, 11,12

California Code of Civil Procedure § 425.16........................................... 1

*California Practice Guide: Federal Civil Procedure Before Trial,* ¶¶ 9:408 -
9:409 (Rutter 2009) ................................................................. 4

Counterclaim 4: Violation of Cal. Bus. & Prof. Code § 17200 ...................... 1, 9

iv

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

1

## MISCELLANEOUS

2   *McCarthy,* § 11:8 ................................................................................ 2

3   *McCarthy on Trademarks and Unfair Competition,* § 11:5 ....................... 1

4   Rule 11 at paragraph (b)(3) ................................................................... 15

5   Rule 502(b)  ..................................................................................... 2

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## **INTRODUCTION**

Several of Counterclaimants' claims should be dismissed at this early stage, for various reasons.  First, most of the counterclaims rely almost exclusively on Exhibit 3, which is an inadvertently sent attorney email.  Plaintiffs' counsel quickly asked that it be destroyed.  Nevertheless, Defendants attempt to base several counterclaims on this one email, which should be stricken from the First Amended Counterclaim under Fed.R.Civ.P. 12(f), 26(b)(5)(B) and FRE 502(b).

Second, Counterclaimants have only alleged subjective bad faith in support of many of their claims. This is inadequate.  The Federal Circuit has repeatedly held that bad faith is a requirement that preempts state causes of action based on publicizing patent rights.  The bad faith required must first include a showing of objective baselessness, and allegations such as those here do not qualify.

Third, because the state law counterclaims are improper and based on Plaintiffs' publication of its patent rights as required by statute, they should be stricken under California's anti-SLAPP statute.  A mandatory award of fees is required under that law.

Finally, in connection with the counterclaim for cancellation of the InStyler trademark, the Court should rule that the mark is distinctive as a matter of law.

## **ARGUMENT**

### I.      **Exhibit 3 to the First Amended Counterclaim Should Be Stricken as Immaterial Matter Under Fed.R.Civ.P. 12(f)**

Defendants' counterclaims rely in large part upon an email that was mistakenly sent by Plaintiff's counsel to Defendants' counsel.  Defendants basically contend that Plaintiffs are liable under several claims and this case is brought in bad faith because Plaintiffs' attorney stated in a privileged, work

1

1  product email that whether Plaintiffs would take down infringing advertisements is
2  a matter "separate and apart from this action." *E.g.*, First Amended Counterclaims,
3  ¶ 13. However, the email was not circulated intentionally. Plaintiffs' counsel
4  inadvertently sent a communication to opposing counsel that was intended for
5  Plaintiff's co-counsel. Swanson Decl., ¶ 5. Plaintiff's counsel quickly notified
6  opposing counsel of the mistake and requested that the email be destroyed.
7  Swanson Decl., ¶ 11.

8      This inadvertently produced privileged document remains privileged
9  pursuant to Rule 502(b) of the Federal Rules of Evidence and Rule 26(b)(5)(B) of
10  the Federal Rules of Civil Procedure, both of which provide that inadvertent
11  disclosure does not waive the privilege. Pursuant to Rule 26(b)(5)(B), Defendants'
12  counsel were required not to use the document, and their only recourse if they
13  chose not to destroy it as requested was to move the court *in camera* for a
14  determination of the privileged character of the document.

15      The fact that this document was not intended to be sent to Mr. Schindler
16  (Defendants' counsel) is obvious on the face of the email itself. The first sentence
17  in the email is "Schindler is full of it." If Plaintiffs' counsel had intended to send
18  this email to Mr. Schindler it cannot be imagined that she would have begun the
19  email with that sentence. Plainly, she would have said "You are full of it" if she
20  meant for this email to go to him.

21      Swanson's declaration explains how she intended to send the email to co-
22  counsel, and mistakenly sent it to opposing counsel. (Swanson Decl. ¶¶ 3-8.)
23  When she learned of the mistake, she sent another email to Mr. Schindler less than
24  90 minutes later stating:

25      "This morning at 9:35 am our time, an email was inadvertently sent to
26      you that was intended for co-counsel, Bill Brutocao. Please delete the email,
27      destroy all copies, and retrieve all copies from any person to whom you sent

28

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

1    it, and likewise instruct them to delete the email and destroy all copies and
2    not further distribute it to anyone."
3    (Swanson Decl. ¶ 11.)
4    The email in question is Exhibit 3 to the First Amended Counterclaims.
5    Counterclaimants rely extensively on the "separate and apart from this action"
6    language in the email in counterclaim numbers 2, 3, 4, 5 and 7.   However, this
7    statement is clearly protected by the attorney-client privilege and the attorney work
8    product doctrine.  It was a strategic communication among counsel done in the
9    context of litigation.  Except for inadvertently sending it to opposing counsel, the
10   email was sent only to co-counsel and clients.  It obviously was a privileged
11   communication, not intended for opposing counsel and ought not to have been
12   used by opposing counsel.
13   In addition to FRE 502(b) and FRCP 26(b)(5)(B), the law makes clear that
14   counsel are not supposed to use inadvertently produced privileged documents, but
15   should follow the instructions of the sending attorney or return them.  In *Gomez v.*
16   *Vernon,* 255 F.3d 1118, 1132 (9th Cir. 2001), the Ninth Circuit quoted with
17   approval ABA Commission on Ethics and Professional Responsibility, Formal
18   Opinion 368 (1992):
19       "A lawyer who receives materials which on their face appear to be subject
20       to the attorney-client privilege or otherwise confidential, under
21       circumstances where it is clear that they were not intended for the receiving
22       lawyer, should refrain from examining the materials, notify the sending
23       lawyer and abide by the instructions of the lawyer who sent them."
24   See also *In re: Southeast Banking Corp. Securities and Loan Loss Reserves Litig.,*
25   212 B.R. 386, 395-97 (S.D. Fla. 1996)(granting motion to return inadvertently
26   produced privileged documents, awarding attorneys fees and costs to moving
27   party, and rescinding *pro hac vice* status of attorney who refused to return
28   inadvertently produced privileged documents).

1    Here, Plaintiffs' counsel promptly notified Mr. Schindler that the email had
2    been sent by mistake. If he abided by his ethical responsibilities, he would have
3    destroyed it and not used it for any purpose.

4    Because Defendants have no right to use the inadvertently sent email, they
5    have no right to base any of their contentions in the counterclaims on that email.
6    Accordingly, the email itself (Exhibit 3) and all allegations pertaining thereto
7    should be stricken from the amended counterclaims. Plaintiffs move under Rule
8    12(f) to have them stricken. In addition, Plaintiffs request that the court order
9    Defendants to destroy all copies of the inadvertently produced email and not use it
10   for any purpose.

11   Rule 12(f) provides that immaterial, impertinent or scandalous matter can be
12   stricken from a pleading. "Immaterial" matter is matter that has no bearing on the
13   questions before the court. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.
14   1993) (rev'd on other grounds at 510 U.S. 517, 534-35 (1994). "Impertinent"
15   matter includes allegations that are not responsive or relevant to issues involved in
16   the action and which could not be admitted as evidence in the action. *Fantasy*, 984
17   F.2d at 1527. A showing of prejudice is usually required under Rule 12(f). *United*
18   *States v. $200,266 in U.S. Currency*, 864 F.Supp. 1414, 1421 (D. Puerto Rico
19   1994).

20   Since Exhibit 3 is inadmissible, and cannot properly be used by Defendants
21   for any purpose, it is immaterial, i.e., it can have no bearing on this matter. It is
22   simply a communication among counsel. It is not relevant to Plaintiffs' actions. It
23   is a strategic statement by Plaintiffs' counsel regarding this litigation.

24   Courts differ on the degree of prejudice that must be shown under Rule
25   12(f), but it is generally agreed among commentators that prejudice is important
26   consideration under Rule 12(f). *See generally California Practice Guide: Federal*
27   *Civil Procedure Before Trial*, ¶¶ 9:408 – 9:409 (Rutter 2009). First, it is obviously
28   prejudicial because Counterclaimants have pounced on Exhibit 3 as the basis for

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

1    most of their Counterclaims.  Counterclaimants allege repeatedly that because

2    Plaintiff's counsel expressed a desire to "take down" infringing advertisements

3    "independent of this action," the action is brought in bad faith.[1]  Without this

4    allegation, most of the Counterclaims evaporate.  Therefore, the allegation is

5    highly prejudicial to Plaintiffs.

6         Because Exhibit 3 is privileged and protected by work product, the Court

7    should strike the Exhibit from the First Amended Counterclaims and order that the

8    Counterclaims be re-plead without any reference to Exhibit 3 or its contents.

9

10   **II.   Several of the Counterclaims Should be Dismissed for Failure To State**

11         **a Claim Because Bad Faith Is Not Properly Pleaded**

12         Counterclaim numbers 2, 3, 4, 5, and 7 should be stricken because they fail

13   to plead bad faith adequately.

14

15         **A.   Bad Faith In Patent Law**

16         Federal law preempts state court causes of action based upon

17   communications regarding patent rights.  The Federal Circuit has explained:

18

19         The federal patent laws preempt state laws that impose tort liability

20         for a patentholder's good faith conduct in communications asserting

21         infringement of its patent and warning about potential litigation. *See,*

22         *e.g., Zenith,* 182 F.3d at 1355. In addition, the same First Amendment

23         policy reasons that justify the extension of [*Noerr-Pennington*]

24         immunity to pre-litigation conduct in the context of federal antitrust

25         law apply equally in the context of state-law tort claims.

26   _____

27         [1]  This is a logical leap by Defendants. The fact that Plaintiffs have made use of available
28   procedures to notify third party websites of Plaintiffs' contention that Defendants are selling an
     infringing product in no way is indicative of bad faith in the first place.

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

1   *Globetrotter Software, Inc. v. Elan Computer Group, Inc.* 362 F.3d 1367,

2   1377 (Fed. Cir. 2004).

3       "Bad faith" in this context has objective and subjective components.

4   *Dominant Semiconductors SDN. BHD. v. Osram GMBH,* 524 F.3d 1254, 1260

5   (Fed.Cir.2008). The objective component requires a showing that the infringement

6   allegations are "objectively baseless." *Globetrotter Software,* 362 F.3d at 1375.

7   The subjective component relates to a showing that the patentee in enforcing the

8   patent demonstrated subjective bad faith. *See id.* Without a showing that the

9   infringement allegations are objectively baseless, it is unnecessary to reach the

10  question of the patentee's intent. *See id.*

11

12      Infringement allegations are objectively baseless if "no reasonable litigant

13  could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc.*

14  *v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d

15  611 (1993); *Globetrotter,* 362 F.3d at 1375-76.  To prove bad faith at trial,

16  Counterclaimants would need to show bad faith by clear and convincing evidence.

17  The importance of patent and property rights dictates that the proponent of bad

18  faith "on the part of a patentee enforcing its patent rights has a heavy burden to

19  carry." *800 Adept, Inc. v. Murex Securities, Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir.

20  2008)

21  **B.    Motions To Dismiss After *Twombly***

22

23      The Supreme Court recently re-stated the standard for motions in dismiss in

24  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d

25  929 (2007).  After *Twombly,* under Rule 12(b)(6), a motion to dismiss should be

26  granted if Plaintiff does not state "enough facts to state a claim to relief that is

27  plausible on its face." A claim has "facial plausibility" if the plaintiff pleads facts

28  that "allow[ ] the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal,* ---U.S. - - - -, --- S.Ct. ----, ---

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

1 L.Ed.2d - - - - , 2009 WL 1361536, at *12 (May 18, 2009).  In resolving a 12(b)(6)

2 motion under *Twombly,* the Court must follow a two-pronged approach.

3    First, the Court must accept all well-plead factual allegations as true, but

4 "[t]hread-bare recitals of the elements of a cause of action, supported by mere

5 conclusory statements, do not suffice." *Id.* at *13. Nor must the Court "accept as

6 true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly,* 550

7 U.S. at 555).

8    Second, assuming the veracity of well-pleaded factual allegations, the Court

9 must "determine whether they plausibly give rise to an entitlement to relief." *Id.*

10 This determination is context-specific, requiring the Court to draw on its

11 experience and common sense, but there is no plausibility "where the well-pleaded

12 facts do not permit the court to infer more than the mere possibility of

13 misconduct." *Id.*

14    Because factual challenges have no bearing under Rule 12(b)(6), generally

15 speaking, the Court may not consider material beyond the pleadings in ruling on a

16 motion to dismiss for failure to state a claim. There are, however, two exceptions

17 to this general rule which do not demand converting the motion to dismiss into one

18 for summary judgment. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th

19 Cir.2001). First, a court may consider material that is either attached to the

20 complaint or material upon which the complaint relies, provided the material's

21 authenticity is not contested. *Id.* Second, under Federal Rule of Evidence 201, the

22 Court may take judicial notice of matters of public record if the facts are not

23 subject to reasonable dispute. *Id.*

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS**

**C.      Counterclaimants Have Failed To Plead Bad Faith Adequately on Several of The Counterclaims**

Here, Counterclaimants have made no showing at all that any allegations of infringement were objectively baseless.  Counterclaimants' claims are based exclusively on the email discussed above, and, in some instances, an alleged failure to investigate before filing suit.  However, as shown below, none of these claims pleads objective baselessness.

**Counterclaim 2:  Interference with contractual relations**

In the second Counterclaim, Defendants allege that Plaintiff Tre Milano contacted eBay for "the purpose of removing SNGI's competing advertising from the eBay website." ¶ 10.  An advertising web site, Alibaba.com, sent an email to Defendant Elias Amike "acknowledging that it had removed Defendant SNGI's advertisements from the Alibaba.com website, as a result of receiving a notice from [Plaintiffs' counsel]." ¶ 12.  This conduct allegedly resulted in "an improper loss of economic advantage and harm to Defendants' reputation with various webhosting sites that are critical to SNGI's business activities." ¶ 18.

Nowhere does this claim even purport to plead that the infringement allegations are objectively baseless, *i.e.,* that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60 (1993); *Globetrotter,* 362 F.3d at 1375-76.  Defendants simply charge that Plaintiffs should not have contacted third parties.  Beyond the basic conclusion that Plaintiffs acted in "bad faith" (which is not sufficient under *Twombly*), Defendants provide no detail as to objective baselessness.

Indeed, the Federal Circuit has recently stated that objective baselessness requires "a determination based on the record ultimately made in the infringement proceedings and the record of the state tort action, and not on the basis of

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

1   information available to the patentee at the time the allegations were made."

2   *Dominant Semiconductors SDN. BHD. v. Osram GMBH,* 524 F.3d 1254, 1263 -

3   64 (Fed. Cir. 2008).  This is impossible in this case.

4

5   **Counterclaim 3:  Interference with Prospective Economic Advantage**:

6   This claim adds nothing new to the allegations in the second Counterclaim.

7   ¶ 23 (reincorporating ¶¶ 9 -17).  Defendants claim only that the same conduct has

8   caused "an improper loss of economic advantage."  ¶ 23.  This counterclaim fails

9   for the same reasons as the Second Counterclaim:  there is no allegation of

10  objective baselessness.

11

12  **Counterclaim 4: Violation of Cal. Bus. & Prof. Code § 17200**

13  Again, the claim reiterates the language of ¶¶ 9-17.  *See* ¶ 27.  There is no

14  allegation of objective baselessness.  The claim should be dismissed.

15

16  **Counterclaim 5:  Unfair Competition Under California Common Law**:

17  This claim reincorporates ¶¶ 9-17, 23, 24, 28 and 29 and concludes there has

18  been "an improper loss of economic advantage, from TML's acts constituting

19  unfair competition under California common law."  ¶ 33.  With no allegation of

20  objective baselessness, the claim should be dismissed as a matter of law.

21

22  **Counterclaim 7:  Abuse of Process**:  This claim is quite long and

23  convoluted.  It appears to be based on (i) the stipulated dismissal of a prior suit in

24  which the patentee was not a party; and (ii) failure to examine the accused product

25  before Plaintiff filed suit in this case.

26  The claim fails for multiple reasons.  First, as stated repeatedly above,

27  federal law preempts this claim, so that Counterclaimant must allege objective

28  baselessness.  The Federal Circuit has expressly held that a claim is not objectively

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

1   baseless merely because the patentee performed an inadequate investigation.

2   *Dominant Semiconductors SDN. BHD. v. Osram GMBH*, 524 F.3d at 1260.

3        Finally, the recited claim is based largely on the filing of a prior action.

4   California Courts have repeatedly held that the only tort that can be brought on the

5   basis of filing an action is malicious prosecution.  The California Supreme Court

6   has stated:

7         while a defendant's act of improperly instituting or maintaining an

8         action may, in an appropriate case, give rise to a cause of action for

9         malicious prosecution, the mere filing or maintenance of a lawsuit-

10        even for an improper purpose-is not a proper basis for an abuse of

11        process action.

12  *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*  42

13  Cal.3d 1157, 1169 (1986).

14       Much like the objectively baseless standard discussed above, the lack of

15  probable cause requirement in malicious prosecution protects the right of

16  petition.  *Id.* at 575 ("[t]he elements of the common law malicious-prosecution

17  cause of action have evolved over time as an appropriate accommodation

18  between the freedom of an individual to seek redress in the courts and the interest

19  of a potential defendant in being free from unjustified litigation")

20

21  **III.**    **Tre Milano's Activities Are Protected Petitioning, So That Defendants'**

22        **Counterclaims Should Be Stricken Under the Anti-SLAPP Statute and**

23        **Fees Awarded.**

24       Because several of Defendants' counterclaims are based on protected

25  activity, California's anti-SLAPP statute, codified at Cal. Civ. Proc. Code § 425.16,

26  applies, and the state tort claims should be stricken with fees awarded to Plaintiffs.

27

28

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

1    **A.    The Anti-SLAPP Statute in Federal Court.**

2         The anti-SLAPP statute provides a quick means of terminating lawsuits that

3    chill the exercise of a Plaintiff's constitutional rights of petition and free speech.

4    The anti-SLAPP statute provides that:

5              A cause of action against a person arising from any act of that person

6              in furtherance of the person's right of petition or free speech under the

7              United States or California Constitution in connection with a public

8              issue shall be subject to a special motion to strike, unless the court

9              determines that the plaintiff has established that there is a probability

10             that the plaintiff will prevail on the claim.

11   Cal. Civ. Proc. Code § 425.16(b)(1).

12        The anti-SLAPP statute was "intended broadly to protect, *inter alia*, direct

13   petitioning of the government and petition-related statements and writings. . . ."

14   *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 61, 124 Cal.

15   Rptr. 2d 507 (2002).

16        Application of the anti-SLAPP statute involves a two part, burden shifting

17   test. *Navellier v. Sletten*, 29 Cal. 4th at 88.  The moving party must first show that

18   Plaintiff's complaint is "arising from" activities within the scope of the statute.

19   Plaintiffs "meet this burden by demonstrating that the act underlying the

20   [counterclaimant's] cause fits one of the categories spelled out in section 425.16,

21   subdivision (e). . . ." *Navellier*, 29 Cal. 4th at 88.   Activities within subdivision (e)

22   include:

23             (1) any written or oral statement or writing made before a legislative,

24             executive, or judicial proceeding, or any other official proceeding

25             authorized by law;

26             (2) any written or oral statement or writing made in connection with

27             an issue under consideration or review by a legislative, executive, or

28             judicial body, or any other official proceeding authorized by law

11

**NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS**

1   Cal. Civ. Proc. Code § 425.16(e).

2        Once the moving party (here, Counterdefendants) shows that the complaint

3   arises from activities within the scope of the statute, the burden shifts to the

4   opposing party (here, Counterclaimants) to show a "probability" of success on the

5   merits.  This requires showing of a "substantiated legally sufficient claim."

6   *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).   Counterclaimants may present

7   affidavits and declarations of evidence that would be admissible at trial; averments

8   on "information and belief" are insufficient.  *Evans v. Unkow*, 38 Cal. App. 4th

9   1490, 1498, 45 Cal. Rptr. 2d 624 (1995) ("An averment on information and belief

10  is inadmissible at trial, and thus cannot show a probability of prevailing on the

11  claim.").  "[A] SLAPP motion, like a summary judgment motion, pierces the

12  pleadings and requires an evidentiary showing."  *Simmons v. Allstate Ins. Co.*, 92

13  Cal. App. 4th 1068, 1073 (2001).  If Counterclaimants cannot demonstrate a

14  probability of success on the merits--by competent, admissible evidence--the

15  Claims must be stricken.  *Evans*, 38 Cal. App. 4th at 1498.

16       Special procedural rules apply where an anti-SLAPP motion is brought in

17  federal court. If a defendant makes an anti-SLAPP motion based on the plaintiff's

18  failure to submit evidence to substantiate its claims, the motion is treated as a

19  motion for summary judgment, and discovery "must be 'developed sufficiently to

20  permit summary judgment under Rule 56.' " *In re Bah,* 321 B.R. 41, 45 n. 6 (9th

21  Cir.BAP2005) ( *citing Rogers v. Home Shopping Network,* 57 F.Supp.2d 973, 982

22  (C.D.Cal.1999)). This is because to permit a defendant to invoke Section 425.16 to

23  require a plaintiff to present evidence to support her claims before an opportunity

24  for discovery would directly conflict with Federal Rule of Civil Procedure 56.

25  *Rogers,* 57 F.Supp.2d at 980-82 ("[w]hen a state procedural rule directly conflicts

26  with a Federal Rule of Civil Procedure, the Federal Rule generally controls ...[I]f a

27  defendant desires to make a special motion to strike [under Section 425.16] based

28  on the plaintiff's lack of evidence, the defendant may not do so until discovery has

**NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS**

1   been developed sufficiently to permit summary judgment under Rule 56.")

2   However, as in this case, if an anti-SLAPP motion is based on legal

3   deficiencies in the complaint, a federal court "must determine the motion in a

4   manner that complies with the standards set by Federal Rules 8 and 12." *Id.* ( *citing*

5   *Rogers,* 57 F.Supp.2d at 982.)

## B.   All of the Counterclaims Except the First and Sixth Should Be Stricken Under the Anti-SLAPP Statute

8   The primary thrust of the second, third, fourth, fifth and seventh

9   counterclaims is that Plaintiffs wrongfully contacted third parties regarding their

10   patent rights.  The "primary thrust or gravamen" of a claim is the key

11   consideration.  *Ramona Unified School Dist. V. Tsiknas*, 135 CA4th 510, 519-520

12   (2005).  The actual label used is not important.   Here, each of the enumerated

13   counterclaims is based on petitioning activity because the anti-SLAPP statute

14   applies to litigation and litigation-based activity.

15
16   The Federal Circuit has repeatedly stated that "patent law bars the
17   imposition of liability for publicizing a patent in the marketplace unless the
18   plaintiff can show that the patent holder acted in bad faith."  *Dominant*
19   *Semiconductors SDN BHD v. Osram Gmbh*, 524 F.3d 1254, 1260 (Fed. Cir. 2008)
20   (quoting  *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336
21   (Fed Cir. 1998)

22   This result is the same under federal and state law. *See Hagberg v.*

23   *California Federal Bank* 32 Cal.4th 350, 368 (2004) (statements made in

24   preparation for or to prompt investigation that might result in the initiation of

25   official proceedings protected by litigation privilege).  The California Supreme

26   Court has stated:

27   '[W]e previously have declined to construe the anti-SLAPP statute so

28   as to produce 'the anomalous result that much direct petition

1   activity. . . [,] while absolutely privileged under the litigation privilege

2   . . . and under the federal and state Constitutions, would not be

3   entitled to the procedural protections of the anti-SLAPP law. . . ."

4   *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 64, 124 Cal.

5   Rptr. 2d 507 (2002) (citing *Briggs v. Eden Council for Hope and Opportunity,* 19

6   Cal. 4th 1106, 1121, 81 Cal. Rptr. 2d 471 (1999)).

7       Perhaps most importantly, under federal law, a patentee is entitled-- and

8   indeed encouraged—to publicize the existence of a patent.  The statutory mandate

9   allowing patentees to publicize their rights is brings the state tort claims here

10   within the anti-SLAPP statute.

11       The purpose of requiring the plaintiff toto plead and prove "bad faith" when

12   it is otherwise otherwise not an element of the underlying claim is to permit patent

13   holders to publicize their patent rights without incurring liability under state and/or

14   federal unfair competition laws.  *Foboha GmbH v. Gram Technology, Inc.*  2008

15   WL 4619795, 6 (N.D.Ill.) (N.D.Ill.,2008).

16       The Federal Circuit has long held that patentees are entitled to notify

17   potential infringers, which includes all those who "make, use or sell" products.

18   *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985)

19   ("[patentee] had the right to exclude others from making, using, and selling the

20   invention and to enforce those rights until the '028 patent was held invalid.

21   [Patentee] did only what any patent owner has the right to do to enforce its patent,

22   and that includes threatening alleged infringers with suit. *See* 35 U.S.C. § 281.").

23       Because Counterdefendants have met their burden under the anti-SLAPP

24   statute, it is now incumbent upon Defendants to show why the statute does not

25   apply or how the Counterclaims survive its application.

26

27

28

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

1   **IV.**   **Plaintiffs Have Properly Pursued a Patent Infringement Claim Based**
2   **on Defendants' Advertising and Offering For Sale a Knock-Off of**
3   **Plaintiffs' Patented Product.**

4   Defendants argue that they did not have an actual product prior to the
5   complaint filed herein and so Plaintiffs could not have determined in advance of
6   filing suit that the product they were offering for sale actually infringes the patent.
7   The basis for this allegation is set forth in the complaint herein at paragraph 32, to
8   wit:

9   "Plaintiffs are informed and believe and based thereon allege that they are
10  likely to have evidentiary support that Defendants are committing acts of
11  infringement . . . after a reasonable opportunity for further investigation and
12  discovery.  The bases for this allegation include but are not limited to the
13  representations by Defendants with respect to their so-called Rolling Styler product
14  as reflected in the offers for sale on Ebay as reflected on Exhibit "C" and offers to
15  sell the product on www.alibaba.com as reflected on Exhibit "D" and AMKIE's
16  trademark application as reflected in Exhibit "H" and the specimen submitted with
17  that trademark application as reflected on Exhibit "I."

18  This form of pleading is specifically authorized by Rule 11 at paragraph
19  (b)(3), i.e., "the factual allegations have evidentiary support or, if specifically so
20  identified, will likely have evidentiary support after a reasonable opportunity for
21  further investigation or discovery."

22  Defendants have been offering their knock-off product for sale on eBay and
23  alibaba.com since at least April 2009.  An offer for sale is an act of infringement.
24  35 U.S.C. § 271.  The description and depiction of their product in their trademark
25  application imitates Plaintiffs' product.  The only argument for non-infringement
26  by Defendants has been that their product does not have bristles. (See Answer (DN
27  10), Affirmative Defenses at ¶ 4.)  That argument is specious.  The depiction of
28  their product clearly shows bristles. (See Exhibit "I" to the Complaint.)  When

1   asked what are those parts of their product which Plaintiffs' counsel believes are

2   bristles, Mr. Schindler replied, "I don't know, but they aren't bristles." (Swanson

3   Decl. ¶ 12.)

4          There is no absolute requirement to obtain and analyze an infringing product

5   before suing for patent infringement. *Intamin, Ltd. v. Magnetar Technologies,*

6   *Corp.,* 483 F.3d 1328, 1338 (Fed. Cir. 2007).  It is appropriate for a plaintiff to file

7   suit in expectation that discovery will reveal that the defendants' products actually

8   infringe. *Hoffman-La Roche Inc. v. Invamed Incorporated,* 213 F.3d 1359, 1363-64

9   (Fed. Cir. 2000).

10  **V.     The Court Should Rule As A Matter of Law That the InStyler**

11         **Trademark Is Distinctive**

12         Counterclaimants' Sixth Counterclaim purports to allege a claim for

13  cancellation of the mark "InStyler" for "electric irons and for styling hair" because

14  the mark is allegedly "merely descriptive."  This Counterclaim is far fetched, and

15  the Court should rule now as a matter of law that "InStyler" is inherently

16  distinctive.

17         Generally, only distinctive marks are protectable.  A mark is inherently

18  distinctive if it is "suggestive" or "arbitrary or fanciful." *Two Pesos, Inc. v. Taco*

19  *Cabana, Inc.,* 505 U.S. 763, 767 (1992).

20         As explained by Professor McCarthy, fanciful marks consist of coined words

21  invented or selected for the sole purpose of functioning as a trademark.  They are

22  either totally unknown or completely out of usage at the time. *McCarthy on*

23  *Trademarks and Unfair Competition,* § 11:5.  "InStyler" is such a word.  "InStyler"

24  does not exist in the dictionary.  It was coined for Plaintiffs' products.

25
26         Examples of fanciful marks include:

27         ARGYROL antiseptic
28         CLOROX bleach

           CUTEX cuticle-removing liquid

**NOTICE OF MOTION AND MOTION TO**
                                                  **STRIKE PORTIONS OF COUNTERCLAIMS**

1    CUTICURA toilet soap

2    EXXON oil and gasoline products

3    KODAK photographic supplies

4    KOTEX sanitary pads

5

6    *McCarthy,* § 11:8.   Thus, because "InStyler" is a coined term, the Court can and

7    should rule as a matter of law that "Instyler" is not a descriptive term.

8

9        It is to be expected that the Trademark Office will properly discharge its

10   duty. *Kohli v. Gonzalez,* 473 F.3d 1061, 1068 (9th Cir. 2007)("well established

11   principle of federal law that administrative agencies are entitled to a presumption

12   that the 'act properly and according to law.'"); *E.I. du Pont de Nemours & Co. v.*

13   *Berkley and Co., Inc.,* 620 F.2d 1247, 1266 (8th Cir. 1986)("Presumption of

14   validity flows from the congressional assumption that the Patent and Trademark

15   Office properly performed its administrative functions.")

16        It is noteworthy that Defendants' application to register "Rolling Styler" for

17   their product was rejected by the Trademark Office as being "merely descriptive."

18   (Defendants' Answer (DN 10), ¶ 7 p. 9 ll. 1-5.)

19

20        "Rolling Styler" does appear to describe Defendants' product, and the

21   Trademark Office properly rejected the application on that ground.  By the same

22   token, the Trademark Office did not find "Instyler" to be descriptive and properly

23   issued the registration.

24        As against the presumption that the Trademark Office properly did its job,

25   Defendants have not properly pleaded anything other than a conclusory statement

26   that "Instyler" is descriptive.  How is it descriptive?  If the product is a hair styler

27   (as alleged at paragraph 39 in the counterclaim) how is the word "Instyler"

28

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

descriptive of a hair styler?  Plainly, "Hair Styler" would be descriptive, but "Instyler" is not.

The sixth counterclaim should be dismissed for failure to state a claim.

## **CONCLUSION**

For the foregoing reasons, Counterdefendants' motion to strike, motion to dismiss, and special motion to strike should be granted.


Dated:   August 6, 2009                    SHELDON MAK ROSE & ANDERSON PC


By: _____
     Jeffrey G. Sheldon
     William J. Brutocao
     A. Eric Bjorgum

Attorneys for Plaintiffs/Counterdefendants
MM&R PRODUCTS, INC. and TRE MILANO, LLC

NOTICE OF MOTION AND MOTION TO
STRIKE PORTIONS OF COUNTERCLAIMS

**PROOF OF SERVICE**
CCP §§ 1013, 1013a  (New January 1, 2005)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

1.      At the time of service I was over 18 years of age and **not a party to this action**.

2.      My business address is: 100 Corson Street, Third Floor, Pasadena, CA 91103-3842.

3.      On **August 6, 2009**, I served the following document(s):

      X    The documents are listed on Attachment "A."

4.      I served the documents on the **persons** below, as follows:

    a.  **Name** of person served:

    b.  **Address** of person served:

    c.  **Fax Number** or **e-mail address** of person served, if service was by fax or e-mail:

    d.  Time of service, if personal service was used:

    **X** The names, addresses, and other applicable information about the persons served is on Attachment "B."

5.      The documents were served by the following means (specify):

    a. ☐    **By personal service**.  I personally delivered the documents to the persons at the addresses listed in Item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

    b. X    **By United States mail**.  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in Item 4 and (specify one):

        (1) ☐   **deposited** the sealed envelope with the United States Postal Service, with the postage fully prepaid.

        (2) X   **placed** the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Pasadena, California.

    c. ☐    **By overnight delivery**.  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in Item 4.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in Item 4 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in Item 4. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

f. X **By e-mail or electronic transmission.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed in Item 4. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

g. ☐ **By E-FILING.** The document will be E-Filed and a "Notification of E-Filing" will be e-mailed by the Court to all registered attorneys.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I further declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.

Executed on **August 6, 2009** at Pasadena, California.

Donald K. Piper

## DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in Item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on (date):

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on **August 6, 2009** at _____, California.

_____        _____
(Name of Declarant)                                         (Signature of Declarant)

**ATTACHMENT "B" TO PROOF OF SERVICE**

**NAMES, ADDRESSES, AND OTHER APPLICABLE INFORMATION ABOUT PERSONS SERVED:**

| Name of Person Served | Address (business or residential), Fax, or E-mail (as applicable) Where Served | Manner of Service |
|---|---|---|
| Edwin D. Schindler, Esq. | LAW OFFICES OF EDWIN D. SCHINDLER<br>Five Hirsch Avenue<br>P. O. Box 966<br>Coram, New York 11727-0966<br>T: (631) 474-5373<br>F: (631) 474-5374<br>E-Mail: EDSchindler@att.net, EDSchindler@optonline.net | E-Mail and U.S. Mail |
| Robert E. Lyon, Esq. | LAW OFFICES OF ROBERT E. LYON<br>1055 West 7th Street, Suite 1880<br>Los Angeles, CA 90017<br>T: (213) 215-5365<br>F: (213) 622-7890<br>E-Mail: BobLyon@cox.net, RL@naturesaccent.com | E-Mail and U.S. Mail |

## ATTACHMENT "A" TO PROOF OF SERVICE

**LIST OF DOCUMENTS SERVED:**

1. NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF COUNTERCLAIMS PURSUANT TO FRCP 12(f); TO DISMISS COUNTERCLAIMS PURSUANT TO FRCP 12(b)(6), AND TO STRIKE COUNTERCLAIMS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE 425.16;

2. [PROPOSED] ORDER GRANTING MOTION TO STRIKE PORTIONS OF COUNTERCLAIMS PURSUANT TO FRCP 12(f); TO DISMISS COUNTERCLAIMS PURSUANT TO FRCP 12(b)(6), AND TO STRIKE COUNTERCLAIMS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE 425.16;

3. DECLARATION OF ELIZABETH SWANSON IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE PORTIONS OF COUNTERCLAIMS PURSUANT TO FRCP 12(f); TO DISMISS COUNTERCLAIMS PURSUANT TO FRCP 12(b)(6), AND TO STRIKE COUNTERCLAIMS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE 425.16.