1  Jeffrey G. Sheldon (State Bar. No. 67516)
   William J. Brutocao (State Bar No. 75959)
2  SHELDON MAK ROSE & ANDERSON PC
   100 Corson Street, Third Floor
3  Pasadena, California  91103-3842
   Telephone : (626) 796-4000
4  Fax Number: (626) 795-6321
   E-Mail:  jgsheldon@usip.com
5           william.brutocao@usip.com

6  Elizabeth Swanson (State Bar No. 150894)
   SWANSON & ASSOCIATES
7  9454 Wilshire Boulevard, Suite 500
   Beverly Hills, California  90212
8  Telephone:  (310) 860-0880
   Facsimile:  (310) 860-0830
9  E-Mail:  els@elswansonlaw.com

10
   Attorneys for Plaintiffs and Counterdefendants
11 MM&R PRODUCTS, INC. and TRE MILANO, LLC
12

13                    UNITED STATES DISTRICT COURT
14
                     CENTRAL DISTRICT OF CALIFORNIA
15

| | |
|---|---|
| 16  MM&R PRODUCTS, INC., a California corporation, and TRE MILANO, LLC,  a California limited liability company, | Case No.  CV 09-04082 VBF (RBx) |
| 17 | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING THE OUTCOME OF REEXAMINATION** |
| 18 | |
| 19                   Plaintiffs, | |
| 20         v. | Date:    August 31, 2009 |
| 21 | Time:    1:30 p.m. |
| 22  STITCH N' GENIUS, INC., a California corporation; ELIAS AMKIE, an individual; DOES 1-10, inclusive, | Place:   Courtroom 9 |
| 23 |   Hon. Valerie Baker Fairbank |
| 24                   Defendants. | |
| 25 | |
| 26  STITCH N' GENIUS, INC., a California Corporation; and ELIAS AMKIE, an individual, | |
| 27 | |
| 28 | |

| | |
|---|---|
| 1 | Counterclaimants, |
| 2 | |
| | vs. |
| 3 | |
| 4 | MM&R PRODUCTS, INC., a California corporation; and TRE MILANO, LLC, a California Limited Liability Company, |
| 5 | |
| 6 | |
| 7 | Counterclaim-Defendants. |
| 8 | |

Plaintiffs, MM&R Products, Inc. ("MM&R") and Tre Milano, LLC ("Tre Milano") submit this opposition to the motion for stay pending reexamination filed by Defendants.

1

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     PROCEDURAL BACKGROUND ................................................................ 1

III.    LEGAL STANDARD .................................................................................... 2

IV.     ARGUMENT ................................................................................................. 3

    A.  The Motion To Stay Should Be Denied................................................. 3
        1.  A Stay Would Severely Prejudice Plaintiffs ............................. 3
        2.  The Reexam Is Likely to Take Several Years          8
        3.  The Reexam Is Not Likely To Succeed..................................... 8
        4.  The Reexam Will Not Simplify This Case ................................ 9
        5.  This Dispute Has Been Pending For Many Months................... 9
        6.  Due to the Precarious Financial Condition of Defendants, Plaintiffs May Be Left With No Recourse For Their Infringing Sales If This Action Is Stayed. ............................... 10

V.      CONCLUSION ............................................................................................ 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bartex Research, LLC v. FederalEx Corp.*,
  611 F. Supp. 2d 647 (E.D. Tex. 2009) ................................................................. 3, 4

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ................................................................................. 4

*Intellectual Property Development v. TCI Cablevision*,
  248 F.3d 1333 (Fed. Cir. 2001) ............................................................................... 1

*Premier Intern. Associates LLC v. Hewlett-Packard Co.*,
  554 F. Supp. 2d 717 (E.D.Tex.2008) ...................................................................... 3

*Soverain Software LLC v. Amazon.com, Inc.*,
  356 F. Supp. 2d at 662 ............................................................................................ 3

*Tesco Corp. v. Weatherford Intern., Inc.*,
  599 F. Supp. 2d 848 (S.D.Tex. 2009) ................................................................. 3, 4

## STATE CASES

*02 Micro Int'l v. Beyond Innovation Tech. Co.*,
  C.A. No. 2:04-cv-32 (TJW), 2008 WL. 4809093 (E.D.Tex. Oct. 29, 2008) ........... 3

*Cooper Technologies Co. v. Thomas & Betts Corp.*,
  No. 2:06-cv-242, 2008 WL. 906315 (E.D.Tex. Mar. 31, 2008) ............................. 3

*Innovative Office Products, Inc. v. Spaceco, Inc.*,
  2008 WL. 4083012 (E.D. Pa.) ............................................................................ 3, 6

*Remington Arms Co. v. Modern Muzzleloading, Inc.*,
  No. 2:97CV00660, 1998 WL. 1037920 (M.D.N.C. Dec.17, 1998) ........................ 4

## FEDERAL STATUTES

35 U.S.C. § 316 ........................................................................................................ 3, 4

FRCP 26(b)(5)(B) and ................................................................................................. 2

## MISCELLANEOUS

*McCarthy on Trademarks* 19:123 ............................................................................... 2

## I. INTRODUCTION

The motion for stay should be seen for what it is, a tactical maneuver by Defendants to avoid penalty while they exploit the market for an innovative hair-styling product invented by Plaintiffs. Defendants are not likely to be able to satisfy any significant damages award, and so if this action is stayed, Plaintiffs are likely to be without recourse.

Because of the prejudice to Plaintiffs if the action is stayed, the extreme length of Patent Reexamination proceedings in general, and the reprehensible conduct of Defendants, this motion should be denied.

## II. PROCEDURAL BACKGROUND

On April 20, 2009 Plaintiff Tre Milano filed its original complaint against Defendants in this court as case number CV 09-02727. Defendants moved to stay that case and at the same time moved to dismiss for lack of standing because MM&R, the named patentee, was not a plaintiff in that case. Defendants deliberately filed an answer at the same time as they filed their Rule 12 motion to prevent Plaintiffs from amending as of right. Also, Defendants failed to comply with the Local Rule 7-3 meet and confer requirement in that case. Their motion was denied. Declaration of Elizabeth Swanson ("Swanson Decl."), at ¶¶ 4-5.

As exclusive licensee with all substantial rights under the patent, Tre Milano could have proceeded alone in the first action, but rather than expend time and money litigating a standing issue, Plaintiffs agreed that MM&R would join as a plaintiff. Plaintiff in the first action could have moved to amend to join the patentee. *See Intellectual Property Dev. v. TCI Cablevision,* 248 F.3d 1333 (Fed. Cir. 2001). The other alternatives were to file a separate action and move to consolidate, or as was eventually agreed, Plaintiffs filed this second action and the

1  first action was dismissed without prejudice.[1]

2  In this action, the complaint was filed on June 8, 2009.  Defendants filed
3  their amended answer and counterclaim on July 21, 2009.  Defendants relied
4  extensively in their counterclaim on a privileged email inadvertently sent to
5  Defendants' counsel by one of Plaintiffs' counsel.  Plaintiffs have moved to strike
6  all references to the email in a separate motion set for hearing on the same date as
7  this motion.  As explained in that motion, Plaintiffs contend that Defendants'
8  counsel have violated FRCP 26(b)(5)(B) and ethical standards promulgated by the
9  ABA by refusing to return or destroy the inadvertently forwarded email. Swanson
10  Decl. at ¶ 7.

11  Defendants' lead counsel has also failed to apply for *pro hac vice* admission
12  in this action, notwithstanding the fact that he was so admitted in the first action.[2]

13

14  **III.   LEGAL STANDARD**

15  In evaluating a motion to stay, Defendants attempt to state the standard, but
16  they do not get it right or apply it correctly.  Defendants identify three factors for
17  consideration:  (i) the stage of the litigation; (ii) whether a stay would cause undue
18  prejudice or cause a clear disadvantage to the non-moving party; and (iii) whether a
19  stay would simplify the issues for trial.  See Motion at 4:26—5:4.  In actuality, the
20  second factor does not require "undue prejudice" or "clear disadvantage."  The
21  question is really whether a *tactical* advantage will be gained by a stay.  Recently,
22  one court put it thus:

23

---

[1] Defendants used this Court's order of dismissal to misrepresent its legal posture in this case to a third party.  Swanson Decl. at ¶ 6, Exh. A.

[2] Defense counsel appear to have a cavalier attitude toward following the rules. On August 10, there was no appearance at the scheduling conference by Defendants. Defense counsel apparently filed an inappropriate document on August 12, 2009 (Dkt. No. 82.) attempting to explain their absence.  Swanson Decl., ¶ 8.  Now, they have not bothered with the *pro hac vice* process. Presumably, they will contend that the *pro hac vice* status from the first case applies in this case, although there is no basis for such a contention.

2

In determining whether to grant a stay, courts consider several factors: (1) ***prejudice or tactical disadvantage to the non-moving party***; (2) whether a stay will simplify the issues in question; and (3) whether discovery is complete and a trial date has been set. *Soverain Software LLC v. Amazon.com, Inc.,* 356 F.Supp.2d at 662; *Premier Intern. Associates LLC v. Hewlett-Packard Co.,* 554 F.Supp.2d 717, 724 (E.D.Tex.2008). (Emphasis added.)

*Tesco Corp. v. Weatherford Intern., Inc.* 599 F.Supp.2d 848, 850 (S.D.Tex. 2009).

Several courts recently, when confronted with a stay request pending reexamination, have denied the stay primarily because the reexamination process has become incredibly long. *See Bartex Research, LLC v. FedEx Corp.,* 611 F.Supp.2d 647, 651 (E.D. Tex. 2009) and *Tesco.*

## IV.  ARGUMENT

### A.  The Motion To Stay Should Be Denied.

Defendants have submitted a petition for reexamination of the patent in suit. Now, they ask the Court to stay this action pending reexamination. The motion to stay should be denied for several reasons.

#### 1.  A Stay Would Severely Prejudice Plaintiffs

Here, there is no doubt that a stay will severely prejudice Plaintiffs. The parties here are direct competitors. Levine Decl. at ¶¶ 2 – 7; 18-23. As stated by the *Tesco* court: "Where the parties are direct competitors, a stay would likely prejudice the non-movant." *Tesco Corp.,* 599 F.Supp.2d at 851 (citing *Cooper Technologies Co. v. Thomas & Betts Corp.,* No. 2:06-cv-242, 2008 WL 906315, *1 (E.D.Tex. Mar. 31, 2008), *02 Micro Int'l v. Beyond Innovation Tech. Co.,* C.A. No. 2:04-cv-32 (TJW), 2008 WL 4809093, at *1 (E.D.Tex. Oct. 29, 2008)).

When a stay request is merely a dilatory tactical move it should be denied. *See Innovative Office Products, Inc. v. Spaceco, Inc.*, 2008 WL 4083012 (E.D. Pa.),

1   *4 ("these dilatory tactics are allowing SpaceCo to continue to possibly infringe on
2   Innovative's patents without any ramifications. Innovative continues to lose market
3   share and revenue the longer this suit continues"); *Remington Arms Co. v. Modern*
4   *Muzzleloading, Inc.,* No. 2:97CV00660, 1998 WL 1037920, at *3 (M.D.N.C.
5   Dec.17, 1998) ("[g]enerally, courts are reluctant to stay proceedings where a party
6   is using the reexamination process merely as a dilatory tactic.")

   Defendants' conduct reveals their intent to wrongfully compete, and it assures that prejudice will result to Plaintiffs if this matter is stayed. Defendants' patent infringement is just one prong in their illegitimate assault on Plaintiffs and the Instyler® product market. Since elbowing their way into the fashion world, Defendants have:

- sold or offered to sell the so-called "Rolling Styler" product on eBay. Declaration of Mark Levine ("Levine Decl."), ¶ 10, Exh. K.
- sold or offered to sell the so-called "Rolling Styler" product under the designation "Rolling **in** Styler" (emphasis added), which is deceptively similar to Plaintiffs' registered INSTYLER® trademark. Levine Decl., ¶ 5, Exh. C.
- placed "metatags" in website code and visible text of online ads for the "Rolling Styler" so that searches for "INSTYLER" would result in hits on Defendants' web page. Use of deceptive megatags is a violation of the Lanham Act in the Ninth Circuit. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.* 174 F.3d 1036, 1065 (9th Cir. 1999). The source code showing the metatags is attached as Exhibit F to the Levine declaration (¶ 6).
- offered the "Rolling Styler" for sale on eBay at a time when the product did not in fact exist, in violation of eBay's "pre-sale" policy. A copy of this pre-sale policy is attached as Exhibit "J" to the Levine Declaration.
- stated in a first trademark application that the "Rolling Styler" mark "was first used in connection with the goods/services in Class 009 on February 1, 2009 and was first used in INTERSTATE commerce in connection with the

4

goods/services in Class 009 on April 1, 2009 and is now in use in such commerce" when apparently the product did not exist at the time. A true copy of Amkie's application to the Trademark Office is attached as Exhibit "L" to the Levine declaration.

- Stated in a second trademark application that a product sold under the "Rotating Iron" mark, "was first used in connection with the goods/services in Class 009 on May 28, 2009 and was first used in INTERSTATE commerce in connection with the goods/services in Class 009 on May 28, 2009 and is now in use in such commerce" when apparently the product did not exist at the time, as evidenced by the specimen showing a "Rolling Styler" submitted with the "Rotating Iron" application. Swanson Decl. at ¶ 12 and Exhibit "B" thereto.

- Advertised the Paris Hilton "Celebrity Styler" mark as "Coming Soon….." while simultaneously advertising the "Celebrity Styler" as only available "through October, 2009. Swanson Decl. at ¶¶ 13-14, Exhibits C and D thereto.

- Now, Defendants' motion to stay states that "**SNGI's product is just now reaching the marketplace.**" Motion at 6:7.

- advertised UL or ETL certification (which requires submission of the actual product for evaluation) while stating that the product is not available. Levine Decl., ¶¶ 8 – 9, Exh. I.

- Advertising the "Rolling Styler" product as being available by September 7, 2009. Swanson Decl. at ¶ 14, Exh. D.

- Demonstrating and offering the "Rolling Styler" product for sale at the COSMOPROF North America professional styling trade show in Las Vegas, Nevada in July, 2009. Swanson Decl. at ¶ 19.

- Continuing to advertise the "Rolling Styler" product at the Professional Beauty Association webpage. Swanson Decl. at ¶ 16, Exh. F.

5

1  Thus, this is not a case where the question of infringement is academic. This
2  case involves real competition in a very fast moving market. Levine Decl. ¶ 24.
3  The Court's overriding concern in ruling on this motion should be the prejudice to
4  Plaintiffs if this case is stayed. Further, Plaintiff Tre Milano's customers are
5  refusing to honor existing contracts for INSTYLER® because of Defendants'
6  actions. Leving Decl., ¶¶ 21-22. The prejudice is not idle speculation but instead
7  borne out by Defendants' repeated deceptive attempts to siphon off Plaintiffs'
8  customers.

9  Defendants' only argument on the factor of prejudice and tactical advantage
10 is that Plaintiffs did not obtain an infringing product before filing this case, so that
11 damage is merely speculative. As shown herein, all of Defendants' arguments
12 regarding whether and when the product is in the market should be taken with a
13 grain of salt.

14 Plaintiffs have made numerous inconsistent misrepresentations on this point.
15 They falsely claim their product is "UL approved" or "ELT/CETL approved" while
16 arguing the product is not available, and so could not be tested by any certifying
17 agency. They have either lied to this Court or to the US Trademark Office with
18 respect to their trademark application. Levine Decl., ¶¶ 11-14. Here they claim
19 that they had not yet made or sold any of their products when the original complaint
20 was filed on April 20, 2009, and as noted above, they now say that the product is
21 just now entering the market (Motion at 6:7). Or maybe it entered the market May
22 28, 2009. Or maybe it is "Coming Soon….." while simultaneously only available
23 "through October, 2009" (Swanson Dec., Exhs. C, D). And in two applications for
24 trademark registration, Elias Amkie declared under penalty of perjury that his first
25 use in interstate commerce of the "Rolling Styler" mark in connection with the
26 goods was April 1, 2009 (Levine Decl., Exh. L), and for the "Rotating Iron" mark
27 (using a "Rolling Styler" specimen) was May 28, 2009 (Swanson Decl., Exh. B). A
28

6

use in interstate commerce means an actual sale of the goods bearing the mark. *See McCarthy on Trademarks* 19:123.

There is evidence that Amkie has experience with other trademarks, including a trademark registration for his recently closed restaurant, "O 4 U" on Beverly Drive, and it is hard to imagine that he does not know what it means to say a trademark is actually in use on goods in commerce. See Swanson Decl. ¶ 20. Was Amkie lying then or is he lying now?

Finally, even if there were any validity to Defendants' timing arguments, Defendants ignore the reality of this market and litigation.  Plaintiffs' do not need a slam dunk case just to file a complaint.  Plaintiffs are entitled to file a complaint and move it through the litigation process.   Plaintiffs are entitled to take Defendants' at their word, i.e., Defendants have been offering their infringing product for sale.  For Defendants to argue that Plaintiffs are not being harmed because they have not actually sold anything rings hollow.[3]  The parties are in direct competition; the case should not be derailed by reexam on the basis of some speculation about when Defendants actually introduced the accused product. Levine Decl. ¶¶ 18-22.

Further, the choice of an *ex parte* reexam shows further manipulation by Defendants.  If this were an *inter partes* reexam, Defendants could not file another reexamination request and would have to submit their best art and arguments to the Patent Office because they could not raise before this court any issues that could have been raised in the reexamination (35 U.S.C. § 316).  Defendants' gamesmanship allows them to piggyback multiple reexaminations to prolong this case and hold other prior art and arguments regarding invalidity for trial.  If the court even considers a stay of the patent portion of this matter, it should not allow Defendants to raise any issues at trial they could have raised by reexamination and should preclude defendant from requesting any further reexaminations.

---

[3] There is a real risk that Defendants are deliberately holding off bringing the product to market under one or more trademark, so that they can flood the market after obtaining a stay.

7

2.     The Reexam Is Likely to Take Several Years.

Plaintiffs' expert, Dennis Crouch, is a widely respected patent law professor who monitors the USPTO closely. As stated in Exhibit B to his accompanying declaration, most reexaminations result in the patent being found valid. (Crouch Report entitled "Ex Parte Reexamination Statistics: Duration and Outcomes, page 5 attached as Exhibit B to Crouch Decl., hereinafter "Crouch Report".) Further, the average reexam takes 33 months. (*Id.* at 5.) This is a lifetime in the world of beauty products.

When there is an administrative appeal filed, the average length is 62 months, and when appealed to the Federal Circuit, 89 months. (*Id.*) Thus, the length of the reexamination proceedings, and potentially any stay issued by this court, is likely to be several years. The extreme length of reexamination proceedings was a significant factor in the denial of stay requests in *Tesco* and *Bartex Research, LLC.,* 611 F.Supp.2d at 651. As the court in *Tesco* noted, "Where [as here] the parties are direct competitors, a stay would likely prejudice the non-movant." 599 F.Supp. 2d at 852.

3.     The Reexam Is Not Likely To Succeed

Most reexamination proceedings conclude with a finding that the patent is valid. That is likely to be the case here. Reexamination results in cancelling all patent claims only about 13% of the time. (Crouch Report at 7.) As Professor Crouch explains, 87% of the time a patent survives reexamination, *i.e.*, at least one claim remains valid after reexam. (Crouch Report at 7.) Further, the fact that reexam was granted is not an indication that the Patent Office believes there is a likelihood that any patent claim is invalid. The "substantial question of patentability" standard is in reality a "low hurdle." (Crouch Report at 2.)

Indeed, a preliminary review of the art cited in the petition for reexamination indicates that there is no genuinely new material for the patent examiner to consider and no new issue relating to patentability is created. The "new" material submitted

is at best cumulative to art that was before the examiner in the first place. See Declaration of Michael Ragosta, the first named inventor on the '228 Patent, at ¶ 3.

### 4. The Reexam Will Not Simplify This Case

Reexamination of the patent in this matter will not simplify the case.

Even if the patent were found invalid, which as explained above is highly unlikely, Plaintiffs have still plead valid claims for unfair competition and trademark infringement.

As shown above in detail, Defendants' assault on Plaintiffs' business is not limited to patent infringement. Defendants have used Plaintiffs' mark to create initial interest confusion via metatags. They have falsely advertised UL or ETL certification. They have made misrepresentations to the U.S. Trademark Office in order to get a trademark. All of these issues will be litigated regardless of the fate of the patent claims.

Defendants also have violated eBay's policies and misled eBay and customers by offering to sell a product which apparently they could not deliver because they had not made it yet. A seller on eBay is not supposed to offer a product for sale if he cannot deliver it within 30 days. Levine Decl. ¶ 10 and Exhibit "J" thereto.

In short, there is a simple description for Defendants: They are rip-off artists who play fast and loose with the truth. A stay of this action would seriously prejudice Plaintiff in the effort to thwart infringers and knock-off artists. This Court should not deny Plaintiffs the opportunity to protect their hard won rights by staying this action for an indefinite period of time that could last many years.

### 5. This Dispute Has Been Pending For Many Months

The final factor in the stay equation is whether a trial date has been set or discovery is complete, i.e., where the case is at procedurally. The Court has held a scheduling conference and set a trial date of July 21, 2010. The unfair competition case should proceed to trial no matter what.

9

1  Regarding discovery, Plaintiffs have submitted their Rule 26 initial
2  disclosures in accordance with the FRCP deadlines. (Defendants have not.)
3  Plaintiffs have served interrogatories and document requests and responses are due
4  from Defendants on September 2, 2009.  Plaintiffs have noticed the deposition of
5  the corporate defendant for August 18, 2009.

6      6.    <u>Due to the Precarious Financial Condition of Defendants,</u>
7           <u>Plaintiffs May Be Left With No Recourse For Their Infringing</u>
8           <u>Sales If This Action Is Stayed</u>.

9  Defendants argue that Plaintiffs will not be harmed by a stay because if the
10 patent is affirmed by reexamination, Plaintiffs will be able to recover damages for
11 infringing sales in the interim.  The problem here is that Defendants are in
12 precarious financial position.  As revealed by a search of public records, Mr.
13 Amkie's house is in foreclosure.  His restaurant, "O 4 U," has closed. Apparently
14 he defaulted on his house payments as of November 2008, and now owes more than
15 $1 million.  A trustee's sale under deed of trust was noticed for August 6, 2009, and
16 apparently has been postponed to September 10, 2009.  (Swanson Decl ¶24 and
17 Exhibit K.)

18 Thus, there is no reason to believe that Defendants will be able to respond in
19 damages several years from now.  In denying a stay when a defendant was out of
20 business and another bankrupt, the court in *Innovative Office Products* noted that
21 "[I]t is unlikely that either company will be able to satisfy a large money damages
22 award depending upon how this case is decided.  Thus, it is possible that ***Innovative***
23 ***will be left with no recourse and a long term loss of market share and revenue***."
24 (2008 WL 4083012 at *4; emphasis added.)

25 Here, the result is likely to be the same.  Although Defendants have not filed
26 bankruptcy, the fact that Amkie has apparently not made a mortgage payment for
27 about 10 months and owes more than $1 million on his home which is being
28

10

foreclosed upon, does not augur well for the prospect that Defendants will be able to pay a large money damages award in this case.  Swanson Decl. ¶¶ 21-24.

A stay is discretionary and should be based on equitable considerations. These defendants come to court with unclean hands, which have been further sullied by the inappropriate and unprofessional conduct of their counsel in attempting to use an inadvertently addressed privileged email.

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to stay this action pending reexamination.

Respectfully submitted,

Dated:  August 17, 2009          SHELDON MAK ROSE & ANDERSON


By:_/s/William J. Brutocao_____
      William J. Brutocao

Attorneys for Plaintiffs and Counterdefendants MM&R PRODUCTS, INC. and TRE MILANO, LLC

11